Argued January 19; reversed February 16, 1937

# FRAME *v.* ARROW TOWING SERVICE ET AL.

(64 P. (2d) 1312)

Department 1.

*Arthur I. Moulton,* of Portland, for appellant.

*Charles R. Spackman, Jr.,* of Portland (W. Elmer Ramsey, of Portland, on the brief), for respondent.

BELT, J.  This is an action to recover damages for personal injuries alleged to have been caused by negligence of the defendants.  The defendants Alfred Pietila and John H. Pietila made no appearance and a judgment by default was entered against them.  A verdict for $1,776.81 was returned against the defendant Arrow

Towing Service, a corporation, and one in favor of the defendant Mary Elizabeth Menefee. Defendant Arrow Towing Service appeals.

██ The motions of the defendant appellant for a directed verdict and an involuntary non-suit require, in accordance with well-established legal principles, a brief statement of facts in the light most favorable to the plaintiff. In determining whether the court erred in submitting the cause to the jury, the plaintiff is entitled to the benefit of every reasonable inference which may be drawn from the evidence. The court is not concerned with questions of fact upon which the evidence is in conflict.

At about 11:30 on the night of May 18, 1935, one Potter was driving an automobile owned by the defendant Mrs. Elizabeth Menefee, in an easterly direction on what is commonly known as the Canyon road leading into the city of Portland. This is a modern four-lane highway—two of the lanes being used for eastbound traffic and the other two lanes for traffic moving in the opposite direction. There is a gravel strip about 3½ feet wide marking the center of the highway. Potter was traveling down hill at a high rate of speed and, as he rounded a turn, the automobile struck and demolished a part of the guard fence on the south side of the highway. It thereupon swerved diagonally across the dry concrete pavement for a distance of 125 feet, stopping near the center of the highway—all of which occurred within the boundaries of the city, but not within any residential or business section. The highway west of the place of accident was straight for a distance of 500 or 600 feet.

Although the automobile was quite badly damaged, Potter succeeded in driving it forward about 25 or 30

feet when, as he says, "the rear end of the car went out and locked". He was obliged to leave it, facing in an easterly direction, substantially parallel with the highway—the left wheels resting on the edge of the gravel strip between the double lanes of traffic.

Within a few minutes after this accident occurred, the plaintiff, a young man 24 years of age, came along on his motorcycle en route to the city and found Potter with the disabled car. Plaintiff conveyed Potter on his motorcycle to the city for the purpose of securing a tow car. After Potter had telephoned to the Arrow Towing Service, plaintiff brought him back to where the wrecked Menefee car had been left on the highway.

In the meantime apparently some one had telephoned the city police station concerning the wreck, as two police officers were at the scene when the plaintiff and Potter arrived. Potter stayed with the car while the plaintiff, in response to Potter's request, proceeded on in a westerly direction in search of Mrs. Menefee's husband to secure from him his "A. A. A." card and bring it back to Potter.

While the plaintiff was away the tow car arrived. It passed the wrecked car, then backed up to its rear end preparatory to picking it up. The lights of the tow car—which was facing up hill in a westerly direction—were dimmed. It also had a red light on its left side and a green one on the right and there was a lighted sign "Arrow Towing Service" on the front of the car. However, the defendant towing company placed no light or sign on the highway to warn oncoming traffic going in an easterly direction that there was a wreck ahead and that the highway was partially blocked. Soon after the tow car arrived, the police officers arrested Potter on a charge of reckless driving and took him in the prowler car to the police station.

About 30 minutes after the tow car arrived, while it and the wrecked car were in the positions on the highway as above stated, the plaintiff, after searching 15 or 20 minutes for Menefee, started home. As he came down hill and approached the scene of the accident, the sole operator of the tow car signalled with a small flashlight for plaintiff to reduce speed. Plaintiff evidently saw the flashlight signal as he slowed down. After he passed the tow car and was alongside the wrecked car, he was overtaken and struck by an automobile driven by the defendant Alfred Pietila. Pietila was driving about 43 miles an hour and failed to reduce his speed before striking the plaintiff. The Pietila car struck plaintiff after first hitting the tow car and "sideswiping" the Menefee car. As a result of this collision, plaintiff was thrown to the pavement and injured. He was taken to the hospital in an unconscious condition and testifies that he remembers nothing about how the accident occurred.

The theory of the plaintiff is that the negligence of the defendants concurred in producing the injuries of which he complains, and that, therefore, they are jointly and severally liable, although no common design or concerted action existed: *Fieger v. Imperial Skating Rink,* 148 Or. 137 (35 P. (2d) 683) ; *Murray v. Helfrish,* 146 Or. 602 (30 P. (2d) 1053) ; *Stamos v. Portland Electric Power Company,* 128 Or. 310 (274 P. 915). No prima facie case was made against the defendant Mary Elizabeth Menefee, but the jury found in her favor. Hence no further comment will be made with reference to the case against her.

The defendant appellant urges in substance that the motions for a nonsuit and directed verdict should have been allowed for the reasons: (1) That plaintiff was

guilty of contributory negligence as a matter of law in that, (a) Any person of ordinary prudence would, under the circumstances, have known of the existing conditions at a point 500 or 600 feet before reaching the scene of the accident and had ample room to pass in safety; (b) It was the duty of the plaintiff under the statute to drive on the extreme right lane of traffic, whereas he drove on the extreme left side of the highway. (2) That there is no evidence tending to show that the alleged negligence of the defendant towing company is the proximate cause of plaintiff's injuries.

We think the question of whether plaintiff was guilty of contributory negligence presented an issue of fact. After an accident has occurred it is comparatively easy in the quietude of the office to demonstrate how it could have been avoided. However, we must measure the conduct of plaintiff by the degree of care which an ordinarily prudent person would have exercised under similar circumstances. It will be recalled that the tow car was not at the scene when plaintiff had last seen the disabled car. When he first saw the lights of the tow car he may have been confused as to its position. Ordinarily, traffic moving up the hill travels on the two lanes on the north side of the highway. He had the right to assume, in the absence of notice to the contrary, that the highway would not be obstructed at that particular place. There was no sign or signal to warn him of such obstruction. The flashlight signal of Goneau, who was in charge of the tow car, may have added to the plaintiff's confusion. Goneau died before trial and the plaintiff's mind is a blank concerning the matter. There were eye witnesses, however, to the accident. Gene Millow testified that as the plaintiff approached the place of the acci-

dent he was traveling from 15 to 18 miles an hour, but, after being signaled by Goneau, who was standing near the left fender of the tow car, plaintiff slowed down to five miles an hour. In the light of all the facts and circumstances, the court can not say as a matter of law that the alleged contributory negligence of the plaintiff precludes recovery.

■■■ Relative to the question as to whether a prima facie case of negligence was established against the defendant Arrow Towing Service, the court answers in the affirmative. It was the statutory duty of such defendant to place at a reasonable distance from the disabled car a sign or signal warning oncoming traffic of the obstruction of the highway. Subdivision (d) of section 55-2401, Oregon Code Supplement 1935, provides:

"Whenever the operator of a wrecker or tow-car engaged in the salvaging of another vehicle shall find it necessary to stop his vehicle so as to obstruct the roadway, such operator shall place at a suitable distance in each direction upon such roadway suitable signs or signals warning the drivers of oncoming vehicles of such operations; and such signs or signals shall be of a design approved by the state highway commission."

Failure to comply with the above statute constitutes negligence per se, as the trial court properly instructed the jury. It is urged by defendant appellant that, since the state highway commission has not approved any signs or signals to be used by tow car operators when engaged in salvaging a wrecked or disabled car, no negligence can be charged against it for failure to put out any suitable sign or signal. We have searched the record in vain for evidence to substantiate such contention and can find none. In the absence of evidence that the state highway commission has not

determined what constitutes a proper or suitable sign or signal for such purposes, the presumption of compliance with the statute will suffice. Regardless of the statute, it would seem that ordinary caution and prudence would dictate that some sign or signal should be given. Even under the common law a prima facie case of negligence against defendant appellant would be established. We conclude that there is evidence tending to show that the combined negligence of the defendant Pietila and the Arrow Towing Service was the proximate cause of the plaintiff's injury. Hence no error was committed in submitting the cause to the jury.

■ Error is assigned because the trail court sustained an objection to the following question: "Is it customary to put out signals or flares in a situation of that kind?" Evidence of a custom in conflict with the statutory duty of the defendant appellant is not admissible: *Myrtle Point Transp. Co. v. Port of Coquille River*, 86 Or. 311 (168 P. 625).

■ Over the objection of the appellant, plaintiff was permitted to amend his complaint at the conclusion of all the testimony, by adding the following specification of negligence:

"(f) In failing to exercise reasonable diligence and dispatch in salvaging and removing from the place of said salvaging operation on Canyon Road the said automobile of MARY ELIZABETH MENEFEE."

In our opinion the amendment should not have been permitted. Such alleged negligence was not a proximate cause. Furthermore, there was no evidence to support the same. Submitting this charge of negligence to the jury constituted error and substantially affected the rights of the appellant.

■ Error was committed in instructing the jury relative to the law of parking vehicles on a highway. The Menefee car was disabled and there was no violation of the law in leaving it temporarily on the highway. The statute in reference to parking has no application to the facts: *Dare v. Boss et al.*, 111 Or. 190 (224 P. 646); *Menge v. Manthey*, 200 Wis. 485 (227 N. W. 938); *Kastler v. Tures*, 191 Wis. 120 (210 N. W. 415). Abstract propositions of law tend towards confusion of the jury.

■ The specification of negligence which follows:

"(c) In stopping and parking said tow car in the center of said Canyon Road partially obstructing said highway, and engaging in salvaging operations at that point, notwithstanding the fact that the automobile of said MARY ELIZABETH MENEFEE *could be moved under its own power* off of the paved portion of said highway;" (Italics ours).

should not have been submitted to the jury. There is no evidence to support the same. The evidence is uncontradicted that the car could not be moved by its own power.

■ There is no evidence that the tow car had glaring or illegal lights. The testimony is uncontradicted that the lights were dimmed and that they were not glaring. This specification of negligence should have been withdrawn from consideration of the jury. The instructions relative to "glaring or dazzling" lights are abstract.

■ Arrow Towing Service was also charged with negligence:

"(b) In flagging the plaintiff by means of a flashlight signal and causing him to come almost to a stop, notwithstanding the fact that there was adequate room on the plaintiff's side of the highway to pass said

obstruction, well knowing that no adequate provisions had been taken to assure the stopping of other traffic and motor vehicles following the motorcycle operated by the plaintiff;"

"(d) In engaging in salvaging operations of said automobile of MARY ELIZABETH MENEFEE without sufficient operators to conduct said salvaging operations with safety to the public lawfully using said highway and more particularly this plaintiff;" and

"(e) In stopping and parking said tow car in such a position on said highway with the headlights thereof brightly lighted and directed in a westerly direction in such a manner as to blind and confuse drivers of motor vehicles approaching the point of said obstruction on said highway from the west."

These specifications of negligence should be eliminated. There is no evidence to support any of them. The flagging of the plaintiff was not negligence on the part of the appellant. Such evidence might be proper for consideration of the jury relative to the issue of contributory negligence, but so far as the appellant is concerned it tends to show due care rather than the failure to exercise the same.

The judgment is reversed and the cause remanded for a new trial solely as against the defendant Arrow Towing Service.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.